UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

In Re: Whaleco/Potter Handy Data Privacy Mass Actions

**MEMORANDUM & ORDER**
25-CV-4916 (MKB)

---------------------------------------------------------------

In Re: WhaleCo Inc. Privacy Litigation

25-CV-5854 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Defendant Whaleco, Inc., doing business as Temu ("Temu"), filed the instant motion[1] on June 18, 2026 against Plaintiffs in both *In re Whaleco/Potter Handy Data Privacy Mass Actions* (25-CV-4916) and *In re Whaleco Privacy Litigation* (25-CV-5854) (listed in Appendix A this Memorandum and Order) for attorneys' fees and costs incurred by Temu in securing an order compelling arbitration in the two related actions, (the "Actions").[2] (Def.'s Mem. 1 n.1.) Plaintiffs, who are all Temu users, initially filed complaints in California state court between March and June of 2025, alleging violations of various California privacy, business, and advertising laws by Temu. (*Id.* at 2–3.) Temu removed these cases to the Central District of

[1] (Def.'s Mot., Docket Entry No. 50; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), appended to Def.'s Mot., Docket Entry No. 50-1; Pls.' Mem. in Opp'n to Def.'s Mot. ("Pls.' Opp'n"), Docket Entry No. 51; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 52.)

[2] Plaintiffs in the Actions are represented by Potter Handy, LLP ("Potter Handy"). Temu is represented by Latham & Watkins. The Actions are substantially similar, and Temu provides that Latham & Watkins incurred the alleged fees and costs in connection with their work on both Actions. (Def.'s Mem. 1 n.1.) Temu filed one motion rather than filing a duplicative motion in both cases, (*id.*), and the parties filed one set of briefing papers. In addition, the Actions contain many identical filings and identical Court orders. Accordingly, the Court addresses Temu's motion for attorneys' fees and costs for both cases in a single decision. Unless stated otherwise, the Court refers to the docket entry numbers of the *In re Whaleco/Potter Handy Data Privacy Mass Actions* (25-CV-4916) docket, where the motion was filed.

California, where they were related and consolidated. (*Id.*) The cases were then transferred to the Eastern District of New York, and by the end of October of 2025, the cases were consolidated into the two Actions before the Court. (*Id.* at 6.) In the midst of briefing a motion to compel arbitration, on February 3, 2026, the parties jointly moved to stay the claims for submission to arbitration in the Actions, which the Court granted. (Order dated Nov. 24, 2025; Joint Motion to Stay Claims, Docket Entry No. 46; Order dated Feb. 4, 2026.) Temu now seeks $597,553 in attorneys' fees and $52,173 in costs pursuant to the Temu's terms of use, (the "Terms").[3] (Def.'s Mem. 2.)

For the reasons explained below, the Court grants Temu's motion for attorneys' fees and costs in the amounts of $302,547.60 and $52,173, respectively.

## I. Background

### a. The Terms

The Court reviews the pertinent sections of the Terms for the motion.[4]

[3] The Terms set forth policies and procedures that govern the relationship between Temu users and Temu. (Def.'s Mem. 1.) The Terms are hyperlinked on the registration screen for Temu's applications, products, services, and websites ("Services"). (Terms last updated Nov. 7, 2025, annexed to Decl. of Serrin Turner in Supp. of Def.'s Mot. ("Turner Decl.") as Ex. L, Docket Entry No. 50-15.) *See Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 274 (E.D.N.Y. 2024). By continuing to use the Services, users agree to the Terms. *See Hu*, 779 F. Supp. 3d at 274.

[4] Temu provides a copy of the Terms dated November 7, 2025. (*See* Terms last updated Nov. 7, 2025.) Plaintiffs argue that Temu relies on a version of the Terms from March of 2025 that postdates the commencement of Plaintiffs' actions, and this "omission alone defeats any claim of contractual fee entitlement." (Pls.' Opp'n 16.) Temu contends that Plaintiffs' argument is meritless because Section 19.8 of the Terms (the provision governing attorneys' fees and costs) has remained the same "at all relevant times, including when Plaintiffs originally brought their lawsuits and throughout the litigation thereafter." (Def.'s Reply 10; *see* Terms last updated Feb. 26, 2025, annexed to Decl. of Serrin Turner in Further Supp. of Def.'s Mot. ("Turner Reply Decl.") as Ex. M, Docket Entry No. 52-2; Terms last updated July 25, 2025, annexed to Turner Reply Decl. as Ex. N, Docket Entry No. 52-3.) Since the Terms included identical Section 19.8 provisions at all relevant times during Plaintiffs' actions, the Court is unpersuaded by Plaintiffs' argument and relies on the Terms from November of 2025, which the parties also rely on and analyze in their briefing papers.

### i. First page of the Terms

On the first page of the Terms, section 1.5 states in relevant part:

> Please be aware that Section 19 below contains provisions governing how disputes between you and us will be resolved, including without limitation, any disputes that arose or were asserted prior to the effective date of the Terms. Section 19 contains, among other things, an agreement to arbitrate which requires, with limited exceptions, that all disputes between you and us be resolved by binding and final arbitration.[5]

(Terms § 1.5; *see id.* § 19.) The provision further provides that:

> Unless you opt out of the agreement to arbitrate within [thirty] days of the effective date of the agreement: (1) you and we will only be permitted to pursue disputes or claims and seek relief against the other party on an individual basis, not as a plaintiff or class member in any class or representative action or proceeding and each of us waives our right to participate in a class action lawsuit or class-wide arbitration; and (2) each of us is waiving our right to pursue disputes or claims and seek relief in a court of law and to have a jury trial. In some countries you may have additional rights and/or elements of the arbitration agreement may not apply to you as required by law.

(*Id.* § 1.5.) Section 19.1 specifies that the parties "agree that any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of [ ] Services . . . will be resolved by binding arbitration . . . rather than in court . . . ." (*Id.* § 19.1.) It states further that all disputes are governed by New York law, (*id.* § 18.3), and all non-arbitrable disputes must be resolved by "a court of competent jurisdiction located in New York, New York," (*id.* § 18.4).

### ii. Section 19.8 attorneys' fees and costs

Section 19.8 of the Terms shifts attorneys' fees and costs to the other party if the following conditions are met:

> If you or we need to invoke the authority of a court of competent jurisdiction to compel arbitration, then the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration. The prevailing party in any court

[5] All-caps formatting was removed for clarity.

> action relating to whether either party has satisfied any condition precedent to arbitration, including the informal dispute resolution process, is entitled to recover their reasonable costs, necessary disbursements, and reasonable attorneys' fees and costs.

("Attorneys' Fees Provision" or "Section 19.8") (*Id.* § 19.8.)

**b. Procedural history**

**i. California state court actions**

Plaintiffs' suits began in California state court in March of 2025 with eight separate cases, identical complaints, and over 900 plaintiffs per case. (Def.'s Mem. 2.) This initial group of cases were consolidated, (Judge Monica Ramirez Almadani Order granting Motion to Consolidate, Docket Entry No. 17), and are before the Court under the caption *In re Whaleco/Potter Handy Data Privacy Mass Actions*. (Def.'s Mem. 3.) Plaintiffs filed an additional eleven similar actions in California state court between May and June of 2025. (*Id.*) This second group of cases were consolidated and are before the Court under the caption *In re Whaleco Privacy Litigation*. (*Id.*) Temu removed all cases to the Central District of California. (*Id.*)

Throughout the entirety of the Actions, Temu maintains that they have consistently advised Plaintiffs that they were bound by the Terms, which required them to arbitrate all disputes, and that any court proceedings must occur in New York, and Plaintiffs would be responsible for Temu's fees incurred in seeking an order to compel arbitration. (*Id.* at 3–4; *see* Terms §§ 18.3, 19.1, 19.8; Emails dated June 24, 2025 to July 11, 2025 ("2025 Emails"), annexed to Def.'s Mem. as Ex. A, Docket Entry No. 50-3; Ltr. dated Sep. 9, 2025; annexed to Def.'s Mem. as Ex. B, Docket Entry No. 50-4.) Plaintiffs denied being "subject to an arbitration agreement" and refused to dismiss the cases in pursuit of arbitration. (2025 Emails 1.)

Temu subsequently moved to dismiss or transfer the *In re Whaleco/Potter Handy Data Privacy Mass Actions* to the Eastern District of New York, pursuant to the forum selection clause

of the Terms. (Def.'s Mem. 4–5.) On August 29, 2025, Judge Monica Ramirez Almadani of the Central District of California District Court granted Temu's motion to transfer, finding "Plaintiffs unambiguously manifested their consent to be bound by [the] Terms," and denied Temu's motion to dismiss without prejudice to renew in the transferee court. (Judge Almadani Order granting Motion to Transfer 6, Docket Entry No. 30.) Subsequent to this decision, Plaintiffs stipulated to transfer *In re Whaleco Privacy Litigation* to the Eastern District of New York, (Def.'s Mem. 5), and by the end of October of 2025, the Actions were before the Court, (*id.* at 6). (*See* Judge Almadani Order Transferring Case dated Sep. 10, 2025, Docket Entry No. 18, *In re Whaleco Privacy Litigation*, No. 25-CV-5854.)

**ii. The Actions in the Eastern District of New York**

Upon transfer, Temu filed a pre-motion letter regarding its anticipated motions to compel arbitration in the Actions, which Plaintiffs opposed, and the Court adopted the parties' proposed briefing schedules in the Actions. (Def.'s Mem. 6; Order dated Nov. 25, 2025; Order dated Nov. 25, 2025, *In re Whaleco Privacy Litigation*, No. 25-CV-5854.) Temu effected service of its motions to compel arbitration on Plaintiffs on December 23, 2025. (Temu's Ltr. re Service of Mot. to Compel Arbitration, Docket Entry No. 44.) On February 2, 2026, Plaintiffs filed a notice letter stating they "agree[d] to stipulate to the referral of their claims to arbitration," and as a result, Temu's motion to compel arbitration was moot. (Pls.' Ltr. Not., Docket Entry No. 45.) The parties then filed a joint motion to stay the claims in the Actions pending arbitration, which the Court granted on February 4, 2026 ("February 2026 Order"). (Joint Mot. to Stay Claims, Docket Entry No. 46; Order dated Feb. 4, 2026.)

On April 29, 2026, Temu filed a notice letter regarding service of its motion for attorneys' fees, (Temu's Ltr. re Service, Docket Entry No. 47), and on May 4, 2026, filed a joint proposed briefing schedule for the motion, (Joint Proposed Briefing Schedule, Docket Entry No. 48). The Court adopted the schedule and directed Magistrate Judge Robert M. Levy to confer

with the parties to try and resolve the matter of attorneys' fees. (Order dated May 5, 2026.) Judge Levy held a telephone conference on May 19, 2026, which did not resolve the dispute. (*See* Min. Entry dated May 19, 2026.)

## II. Discussion

### a. The Terms require Plaintiffs to pay Temu's attorneys' fees and costs for all litigation activity preceding the Court's February 2026 Order

#### i. Temu's arguments

Temu argues, first, that it is entitled to attorneys' fees under the Terms because (1) parties may agree by contract to permit recovery of attorneys' fees; (2) New York courts routinely award attorneys' fees in the context of lawsuits brought to enforce arbitration agreements where the parties have agreed to it by contract; and (3) Temu satisfied each element of the Attorneys' Fees Provision by successfully obtaining an order to compelling arbitration. (Def.'s Mem. 7–8 (internal citations omitted).)

Second, Temu contends that this action is a "straightforward application of Section 19.8," (*id.* at 9), since Temu had to "invoke the authority of a court of competent jurisdiction," (*id.* (quoting Section 19.8)), which includes the litigation fees and costs to remove the cases to federal court, transfer from California to New York, and the motion to compel, (*id.*). Temu argues that the motions to remove and transfer were "necessary preconditions to filing the motion to compel in this Court." (Def.'s Reply 3.) For removal, Temu argues that Plaintiffs filed nineteen state court actions in California, "in direct contravention of Temu's arbitration provision," and this "forced" Temu to litigate removal to compel arbitration. (Def.'s Mem. 9.) With regard to the transfer of cases from California to the Court, Temu argues that the motion to transfer required Temu to litigate contract formation arguments, concerning whether Plaintiffs were bound by the Terms, and these arguments were required "in order to lay the foundation to move to compel" since Plaintiffs "sought to resist arbitration on the same basis." (*Id.* at 11.)

Therefore, "[b]ecause Temu had to invoke the authority of a court to decide this issue, and because it had to be resolved in order to compel arbitration, Temu is entitled to reimbursement for those fees and costs." (*Id.*) Temu further argues that the "only reason" the contractual assent issues were resolved in the transfer motion, as opposed to the motion to compel, was because Plaintiffs filed in California instead of New York. (Def.'s Reply 4.) Temu contends that the Court would be "reward[ing] forum manipulation" if the Court excluded attorneys' fees for the transfer motion. (*Id.*)

Temu also contends that that the Court's February 2026 Order granting the parties' joint request to compel arbitration "constitutes an order 'compelling arbitration' within the meaning of Section 19.8." (Def.'s Mem. 9.) Temu provides that the fact that Plaintiffs stipulated to arbitration, instead of opposing Temu's motion to compel, "is of no moment given that it did so only after Temu had already been forced to spend hundreds of thousands of dollars litigating." (*Id.* (first citing *United Plant & Prod. Workers Loc. 175 Pension Fund by Kilkenny v. J. Pizzirusso Landscaping Corp.*, No. 20-CV-2527, 2022 WL 4139160, at *10 (E.D.N.Y. Aug. 9, 2022); and then citing *Foster v. Boorstin*, 561 F.2d 340, 343 (D.C. Cir. 1977)).) Temu calls Plaintiffs' stipulation a "transparent attempt to avoid the consequences of the fee provision" because it was filed on the day their opposition to Temu's motion to compel was due and after months of notice of the Attorneys' Fees Provision. (*Id.* at 9–10.) In addition, Temu argues it is immaterial that the February 2026 Order was uncontested, as Plaintiffs contend, because Plaintiffs contested Temu's attempts to arbitrate "*up until that point*," forcing Temu to incur costs litigating. (Def.'s Reply 8.)

Third, under Section 19.8, Temu argues it is entitled to all "reasonable fees and costs" incurred in securing the order to compel, "which encompassed: (1) removing the nineteen cases from California state court; (2) briefing the motion to transfer to this Court; and (3) briefing the motions to compel arbitration filed in this Court." (Def.'s Mem. 8, 10.) Temu states that the

fees incurred in briefing their motion to compel "of course fall within [Section 19.8]," and so do the fees incurred from the other litigation actions taken by Temu's attorneys to get before this Court to file the motion to compel. (*Id.* at 10.) Temu argues that Plaintiffs filed in the wrong forum against the express Terms provision requiring litigation in New York, (*id.* (citing Terms § 18.4)), Temu was entitled to litigation in New York, the California federal court found that "Plaintiffs had no basis to proceed in California," (*id.* (citing Judge Almadani Order granting Motion to Transfer)), and therefore the "removal and transfer fees fall . . . within the scope of Section 19.8," (*id.*). Temu contends this conclusion is supported by (1) the "plain language" of Section 19.8 because Temu had to "invoke the authority" of a competent court to compel arbitration, (*id.*; Def.'s Reply 3 (citing *Baugh v. Allied Pros. Ins. Co.*, No. 18-CV-74, 2020 WL 1308681, at *2–3 (D. Utah Mar. 19, 2020)), and (2) the purpose behind Section 19.8, which is "to make a party whole when they are forced to seek judicial intervention to enforce the arbitration clause," (Def.'s Mem. 10–11; *see* Def.'s Reply 8).

**ii. Plaintiffs' arguments**

Plaintiffs argue that Temu seeks recovery for "an unjustified scope of work" exceeding the language of Section 19.8 that includes "broad federal litigation and mass-action coordinated work." (Pls.' Opp'n 3.) First, Plaintiffs argue that New York law requires fee-shifting provisions to be "strictly construed, not enlarged by implication," and Temu's requested fees and costs contain "extensive entries" and "substantial time for forum and transfer litigation" that are not authorized by Section 19.8. (*Id.* at 5–6.) In support, Plaintiffs cite to (1) specific entries unrelated to Temu's motion to compel in Temu's chart of attorneys' fees ("Attorneys' Fees Chart"), (Attorneys' Fees Chart, annexed to Turner Decl. as Ex. C1, Docket Entry No. 50-5), including research on the "motion to transfer/motion to dismiss for forum non conveniens," (Pls.' Opp'n 6 (citing Attorneys' Fees Chart)), and (2) quotes from Temu's memorandum stating a "'significant number' of the 733 claimed hours were spent by litigation services personnel

manually entering 'thousands of plaintiff names into ECF,'" (*id.* (citing Def.'s Mem. 10–11 & 18 n.10)). Second, Plaintiffs argue that even if some of this work regarding removal and transfer "could ever qualify, Temu still had to segregate [the hours] carefully. It did not." (*Id.*)

Third, Plaintiffs argue that Temu's requested fees for the post-transfer work before the Court include various litigation actions related to Plaintiffs' proposed stay which "is a separate litigation issue." (*Id.*) Plaintiffs contend that Temu's records fail to "reliably show why all of that work was 'incurred in securing an order compelling arbitration.'" (*Id.* (quoting Section 19.8)). Overall, after eliminating Temu's billing for "removal work, transfer and forum work, and the clerical or case-management work," Plaintiffs contend that the total billing related to the work on the motion to compel is $88,680.41.[6] (*Id.* at 7.)

Fourth, Plaintiffs argue that Temu is not entitled to a fee award under Section 19.8 because Plaintiffs did not oppose Temu's motion to compel. (*Id.* at 11.) In support, Plaintiffs contend that "New York follows the American Rule:[7] attorneys' fees are not recoverable unless authorized by statute, court rule, or unmistakably clear contractual language." (*Id.* (first citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491–92 (1989); and then citing *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)).) Plaintiffs argue that the Court's February 2026 Order was "a court-approved stipulation," which is "fundamentally different from an adversarial order compelling a resisting party to arbitrate," as contemplated by Section 19.8. (*Id.*) Plaintiffs also argue that Section 19.8, as a contractual fee-shifting clause, "must be strictly construed against the party seeking fees," and because Plaintiffs did not contest

[6] Plaintiffs allege later in their Opposition papers, that entries "arguably related to the motion to compel and pre-motion process total approximately 59.18 hours and $73,151.76." (Pls.' Opp'n 16.)

[7] "The 'American Rule' [is] the bedrock principle that '[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 23 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)).

Temu's motion, "the triggering condition of Section 19.8 was never fully satisfied." (*Id.* at 11–12.)

Fifth, Plaintiffs contend that Temu's cited cases involving withdrawal of one party before judgment are inapposite because the underlying merits in those cases were fully litigated, but in the Actions, Plaintiffs stipulated in order to avoid unnecessary litigation. (*Id.* at 12.) Sixth, Plaintiffs argue that allowing Temu to collect nearly $650,000 in fees based on a stipulated order "would transform a contractual fee-shifting clause into a punitive damages mechanism" disfavored under New York law. (*Id.*) Seventh, Plaintiffs state that a stipulation "is precisely the result the arbitration clause was designed to achieve," and over-awarding fees would deter parties from efficiently resolving disputes through stipulation. (*Id.*)

**iii. Analysis**

"[P]arties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993); *Lebetkin v. Giray*, No. 20-1374, 2021 WL 2965323, at *3 (2d Cir. July 14, 2021) (summary order) (quoting *id.*). Under New York law, courts permit parties to recover attorneys' fees based in contract if it "is unmistakably clear from the language of the [contract]." *Gupta v. Headstrong, Inc.*, No. 20-3657, 2021 WL 4851396, at *2 (2d Cir. Oct. 19, 2021) (summary order) (alteration in original) (quoting *Hooper Assocs.*, 74 N.Y.2d at 492); *Noto v. Muhairi*, No. 23-CV-11102, 2026 WL 2190551, at *5 (S.D.N.Y. May 13, 2026) ("Where attorney's fees are provided for by a provision in a contract, such a provision is enforceable under New York law and courts 'will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable.'" (alteration in original) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987))), *report and recommendation adopted*, 2026 WL 2187335 (S.D.N.Y. July 29, 2026).

In construing a contract, "the court's general objective should be to determine . . . the intention of the parties . . . from the language employed." *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1164 (2d Cir. 2024) (alterations in original) (internal quotation marks omitted) (quoting *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171–72 (1973)); *In re World Trade Ctr. Disaster Site Litig. (In re WTC)*, 754 F.3d 114, 122 (2d Cir. 2014) (explaining that the role of the court is to construe a contract "in accordance with the parties' intent" (quoting *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002))); *Williams v. Buffalo Pub. Schs.*, Nos. 22-2810, 22-2831, 2024 WL 1460134, at *1 (2d Cir. Apr. 4, 2024) (summary order) ("[I]t is well-settled that a court's role 'is to ascertain the intention of the parties at the time they entered into the contract.'" (quoting *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004))). "The best evidence of what the parties intended 'is what they say in their writing.'" *In re WTC*, 754 F.3d at 122 (quoting *Greenfield*, 98 N.Y.2d at 569); *Trez Cap. (Fla.) Corp. v. Noroton Heights & Co.*, No. 20-CV-9622, 2022 WL 2437905, at *3 (S.D.N.Y. July 5, 2022) (quoting *Tomhannock, LLC v. Roustabout Res., LLC*, 33 N.Y.3d 1080, 1082 (2019)) (same). "'[T]he key inquiry at the initial stage of interpreting a contract' is therefore 'whether it is ambiguous with respect to the issue disputed by the parties.'" *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 94 (2d Cir. 2021) (alteration in original) (quoting *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010)); *Gary Friedrich Enters. v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) ("At the outset, the court must determine whether the language the parties have chosen is ambiguous, after giving all 'words and phrases . . . their plain meaning.'" (alteration in original and citations omitted)).

"A contract is unambiguous if its language has 'a definite and precise meaning,' providing 'no reasonable basis for a difference of opinion.'" *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 441 (2d Cir. 2024) (quoting *Greenfield*, 98 N.Y.2d at 569); *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011)

(recognizing that a contract provision is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion" (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007))). "The language of a contract is not made ambiguous simply because the parties urge different interpretations." *Glob. Reinsurance*, 22 F.4th at 94 (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). Rather, a contract term is ambiguous if it "suggest[s] more than one meaning when viewed objectively by a reasonably intelligent person." *In re WTC*, 754 F.3d at 122 (quoting *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)); *see also Glob. Reinsurance*, 22 F.4th at 94 ("[A]n ambiguity exists where the . . . contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (second alteration in original and internal quotation marks omitted) (quoting *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000))); *Lockheed Martin*, 639 F.3d at 69 ("[T]he language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138–39 (2d Cir. 2000))). In determining whether a contract provision is unambiguous, a court must consider the contract as a whole. *See Flynn*, 120 F.4th at 1165–66 ("The contract should be 'read as a whole,' with every part 'interpreted with reference to the whole' in order, *inter alia*, 'to give effect to its general purpose,' 'to safeguard against adopting an interpretation that would render any individual provision superfluous,' and to ensure that particular words and phrases do not receive 'undue emphasis.'" (citations omitted)); *Glob. Reinsurance*, 22 F.4th at 95 ("When ascertaining the meaning of contractual language, 'it is important for the court to read the integrated agreement as a whole.'" (internal quotation marks omitted) (quoting *Lockheed Martin*, 639 F.3d

at 69)). "If the document as a whole 'makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement.'" *Glob. Reinsurance*, 22 F.4th at 95 (quoting *Lockheed Martin*, 639 F.3d at 69); *see also Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003) (stating contracts should be read "as a harmonious and integrated whole" and each part should be "interpreted with reference to the whole . . . to give effect to its general purpose" (quoting *Empire Props. Corp. v. Mfrs. Tr. Co.*, 288 N.Y. 242, 248 (1942))).

The Court finds that the Attorneys' Fees Provision is unambiguous and awards reasonable fees to the party that must invoke the authority of a court to compel arbitration. *See Auad Servs., LLC v. Publishers Circulation Fulfillment, Inc.*, No. 21-CV-10219, 2022 WL 7152450, at *3 (S.D.N.Y. Sep. 21, 2022) (awarding costs and attorneys' fees on a motion to compel after finding unambiguous the fee-shifting provision in the arbitration agreement which read in relevant part "[i]n the event a party fails to proceed with arbitration . . . the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration"). The parties do not dispute the lack of ambiguity or enforceability of the Attorneys' Fees Provision; rather, they dispute the application of the Attorneys' Fees Provision to their entire dispute, including whether Temu is entitled to recover fees and costs for litigation activity preceding the motion to compel filed before the Court and whether Temu obtained an "order compelling arbitration" as contemplated by the Attorneys' Fees Provision. *See DAOL Rexmark Union Station LLC v. Union Station Sole Member, LLC*, 772 F. Supp. 3d 373, 400 (S.D.N.Y. 2025) ("The language of a contract . . . is not made ambiguous simply because the parties urge different interpretations." (alteration in original) (quoting *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 348 (S.D.N.Y. 2013))); *Trireme Energy Holdings, Inc. v. RWE Renewables Americas, LLC*, 757 F. Supp. 3d 445, 491 (S.D.N.Y. 2024) (explaining that the "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the

parties urge different interpretations in litigation," and the "[c]ourt's finding of ambiguity does not turn on the fact that the parties disagree" (citations omitted and first alteration in original)), *aff'd*, --- F.4th ---, 2026 WL 2575270 (2d Cir. Sep. 1, 2026). The Court will accordingly enforce the Terms according to a plain reading of the Attorneys' Fees Provision. *See Hughes Commc'ns India Priv. Ltd. v. The DirecTV Grp., Inc.*, 71 F.4th 141, 148 (2d Cir. 2023) ("We agree with the parties that the contract is clear and unambiguous, and therefore 'must be enforced according to the plain meaning of its terms.'" (quoting *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019))).

**1. Obtaining an "order compelling arbitration" includes litigation activity preceding the February 2026 Order**

The Court finds that Temu is entitled to reasonable attorneys' fees and costs for each of the motions filed by Temu for the Actions — the motion to remove, the motion to transfer, and the motion to compel arbitration — because each of these motions was necessary for Temu to "secur[e] an order compelling arbitration" within the meaning to Section 19.8. (Terms § 19.8.) *See Baugh*, 2020 WL 1308681, at *3 (awarding attorneys' fees for litigation work incurred to remove the case, answer the complaint, and communicate with opposing counsel because the "attorneys reasonably took those actions to obtain the order to compel arbitration"); *but see Nelson v. Cap. Resorts Club, Inc.*, No. 24-CV-2902, 2025 WL 2433216, at *5 (M.D. Fla. June 24, 2025) (recommending removing the hours expended for reviewing discovery, corporate disclosure statements, and case removal to federal court from the defendant's motion for attorneys' fees pursuant to an arbitration agreement, which grants attorneys' fees to the party who obtains an order to compel arbitration, because "removing [the p]laintiff's case to federal court was not a prerequisite to moving to compel arbitration; it was a strategic decision" (alteration omitted) (quoting *Shull v. Cap. Resorts Grp., LLC*, No. 24-CV-2667, 2025 WL 2443280, at *4 (M.D. Fla. Apr. 28, 2025), *report and recommendation adopted*, 2025 WL

2443251 (M.D. Fla. June 2, 2025), *reh'g denied*, 2025 WL 2443160 (M.D. Fla. July 15, 2025))), *report and recommendation adopted*, 2025 WL 2432499 (M.D. Fla. Aug. 22, 2025); *Shull*, 2025 WL 2443280, at *4 (recommending excising from the defendant's attorneys' fees award any time billed for work unrelated to compelling arbitration, including the defendant's work to remove the case, because "under the plain terms of the [arbitration agreement], [the d]efendant is *entitled to attorneys' fees incurred to litigate the matter of arbitration*" which it found included fees and costs only incurred in moving to compel arbitration).[8]

At each stage of the Actions, Plaintiffs were aware of the Terms, including the forum selection clause and the Attorneys' Fees Provision, but disputed that they were bound by them. However, just like a party who disputes being bound to a contract, once a court determines they are bound, the party is liable for breach of contract. *See Frommer v. MoneyLion Techs. Inc.*, No. 23-CV-6339, 2025 WL 2751254, at *1 (S.D.N.Y. Sep. 29, 2025) (finding the defendant bound by the parties' contract and therefore liable for breach of that contract), *appeals docketed*, No. 25-2751 (2d Cir. Oct. 30, 2025), No. 25-2892 (2d Cir. Nov. 13, 2025). In these cases, Judge Almadani of the Central District of California found that "Plaintiffs unambiguously manifested their consent to be bound by [Temu's] Terms," (Judge Almadani Order granting Motion to Transfer 6), and therefore Plaintiffs are bound by the Terms, must adhere to the forum selection clause and arbitration provisions, and are liable under the Attorneys' Fees Provision for the litigation activity that Temu incurred in obtaining the Court's February 2026 Order compelling arbitration.

---

[8] Unlike in these two district court cases from the Middle District of Florida, the Terms contain a forum selection clause that requires litigation in New York and according to New York law. (*See* Terms §§ 18.3, 18.4.) In the Actions, Plaintiffs filed claims under California state law and in California state court. Accordingly, removal and transfer were not strategic decisions, but necessary per the Terms.

In her orders, Judge Almadani noted on multiple occasions that Plaintiffs' litigation strategy caused additional work for the involved parties. First, in her July 3, 2025 order consolidating the cases, Judge Almadani stated that Plaintiffs' decision to proceed in multiple actions with identical motions created "duplicative, unnecessary work for everyone involved." (Judge Almadani Order granting Motion to Consolidate 2.) Second, in concluding that Plaintiffs were bound by the Terms, Judge Almadani noted in her August 29, 2025 order granting transfer that "[i]t is difficult to see how [Temu] could have made the consequences of pressing the Register button any clearer," and "by clicking on the 'Register' and 'Continue' buttons, Plaintiffs unambiguously manifested their consent to be bound." (Judge Almadani Order granting Motion to Transfer 6.) In addition, Plaintiffs ignored October of 2024 case law from this Court, *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 292 (E.D.N.Y. 2024) (the "*Hu* litigation"), where the Court found that the plaintiffs who proceeded to use Temu's Services after moving through the registration screen were bound by the Terms and entered an agreement to arbitrate. *See id.* at 292–97 (granting Temu's motion to compel arbitration and explaining that Temu's "[r]egistration [s]creen provided [the p]laintiffs [with] 'reasonably conspicuous notice' of the Terms," and "through their conduct [of proceeding past the registration screen], [the plaintiffs] unambiguously manifested assent to the Terms"). As a result of Plaintiffs' chosen litigation strategy, Temu had to "invoke the authority of a court of competent jurisdiction" to first remove the cases to federal court and then transfer the cases to the Eastern District of New York in order to proceed with a motion to compel arbitration. (*See* Def.'s Mem. 1 (quoting Section 19.8).) Thus, the removal and transfer motions fall within the scope of Section 19.8, and Plaintiffs owe Temu for the attorneys' fees incurred as a result of those litigation actions.

The Court finds unpersuasive Plaintiffs' argument that because Plaintiffs stipulated to arbitration, they do not owe fees since stipulation is "fundamentally different from an adversarial order compelling a resisting party to arbitrate." (*See* Pls.' Opp'n 11.) Plaintiffs resisted

arbitration from the commencement of their suits in California state court until the deadline for their opposition briefs to Temu's motions to compel arbitration. In fact, before agreeing to a briefing schedule, Plaintiffs submitted a letter in opposition to Temu's pre-motion letter in anticipation of its motion to compel arbitration where Plaintiffs resisted arbitration. (Pls.' Ltr. in Opp'n to Temu's Pre-Mot. Conf. Req. 4 ("Plaintiffs have a good faith argument against compelling arbitration."), Docket Entry No. 40.)

Plaintiffs' claim that declining to file an opposition brief to Temu's motion to compel arbitration does not mean that Plaintiffs did not "contest" Temu's motion and therefore "the triggering condition of Section 19.8 was never fully satisfied." (Pls.' Opp'n 11–12.) Plaintiffs read the word "contest" into Section 19.8 — it does not appear. Instead, Section 19.8 allocates fees when a party had to "invoke the authority of a court of competent jurisdiction to compel arbitration," which is indisputably met in the Actions where Temu had to file three motions to eventually obtain the Court's February 2026 Order granting the parties' joint motion to stay the claims and compel arbitration.

**b. Bad faith**

Temu argues that even if the Attorneys' Fees Provision was not included in the Terms, then they should independently be awarded attorneys' fees and costs because of Plaintiffs' litigation strategy which "only served to multiply litigation costs and delay the inevitable referral to arbitration." (Def.'s Mem. 11–14.) Temu contends that the Court should grant these fees "pursuant to its inherent equitable powers," when a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," (*id.* at 11 (quoting *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 898 (2d Cir. 1997))), or "where the party refusing arbitration acted without justification or did not have a reasonable chance to prevail," (*id* at 12 (quoting *Sinavsky v. NBCUniversal Media, LLC*, No. 20-CV-9175, 2021 WL 4151013, at *6 (S.D.N.Y. Sep. 13, 2021))).

First, Temu argues that Plaintiffs filed "nineteen separate, substantively identical complaints in California state court, which was the wrong forum, the wrong adjudicative system, and in direct contravention of the parties' agreement." (*Id.* at 12.) Second, Temu contends that it "repeatedly reminded" Plaintiffs of the Terms and that Temu would move to compel arbitration and move for fees and costs. (*Id.* at 12–13.) Third, Temu argues that all of Plaintiffs' conduct together "demonstrates the kind of persistent, multiplicitous, and frivolous litigation designed to frustrate arbitration that New York courts have consistently found sufficient to justify an award of attorneys' fees." (*Id.* at 14 (first citing *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634, 635–36 (2d Cir. 2012); then citing *Novik & Co. v. Jerry Mann, Inc.*, 497 F. Supp. 447, 450 (S.D.N.Y. 1980); and then citing *Sands Bros. & Co., Ltd. v. Nasser*, No. 03-CV-8128, 2004 WL 26550, at *3 (S.D.N.Y. Jan. 5, 2004)).) Fourth, Temu argues that other courts dealing with other matters have found that Plaintiffs' attorneys, Potter Handy, "chose[] to impose unnecessary burdens on both defendants and the court system" and issued sanctions. (*Id.* at 14 n.7 (first citing *Lozano v. Cabrera*, No. 22-55273, 2023 WL 2387583, at *1 (9th Cir. Mar. 7, 2023); then citing *Whitaker v. Peet's Coffee, Inc.*, No. 21-CV-7698, 2022 WL 6698328, at *6 (N.D. Cal. Oct. 11, 2022); and then citing *Langer v. Badger Co., LLC*, No. 18-CV-934, 2020 WL 7181076, at *8 (S.D. Cal. Dec. 7, 2020)).)

Fifth, Temu argues that Plaintiffs' argument that they were "testing unsettled law" with "the way that [the Terms] handled batched cases" is without merit because Plaintiffs only raised that issue once in "a two-page pre-motion letter" and then abandoned it. (Def.'s Reply 9.) Sixth, Temu argues that Plaintiffs "cannot argue" it was testing the law while also claiming that Temu's attorneys' fees should be reduced because the legal arguments in the Action are recycled from the Court's prior cases, *Hu* and *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 388–91 (E.D.N.Y. 2025) (the "*Ziboukh* litigation"). (*Id.*) Seventh, Temu argues that the cases cited by Plaintiffs are inapplicable because there is "evidence of improper motive [ ] in the record"

through Plaintiffs' chosen forum of California and filing nineteen lawsuits. (*Id.* (citing Pls.' Opp'n 13).) Eighth, Temu argues that Plaintiffs' stipulation does not "defeat a finding of bad faith," because courts have found bad faith even where a party has ultimately conceded. (*Id.* at 10 (first citing *Raff v. Maggio*, 743 F. Supp. 147, 151–52 (E.D.N.Y. 1990); and then citing *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 276–77, 285–88 (2d Cir. 2021)).)

Plaintiffs argue that the Court should deny Temu's request for "inherent-power sanctions" because the Actions were not "entirely without color" or conducted "for improper purposes such as harassment or delay." (Pls.' Opp'n 12.) First, Plaintiffs argue that "[a]lthough this [C]ourt has issued a few rulings regarding the enforceability of Temu's [Terms]," Plaintiffs expressly acknowledged the Court's previous rulings involving Temu's Terms, *Hu* and *Ziboukh*, and their claims addressed an unaddressed issue — "the way that [the Terms] handled batched cases." (*Id.* at 12–13 (citing Pls.' Opp'n Ltr. to Def.'s Pre-Mot. Ltr. dated Nov. 4, 2025, annexed to Decl. of Krista Hemming in Supp. of Pls.' Opp'n ("Hemming Decl.") as Ex. F, Docket Entry No. 51-7).)

Second, Plaintiffs argue that attorneys' fees pursuant to the Court's "inherent equitable power requires a high threshold showing of bad faith" that is not met in this case because Plaintiffs presented a "litigable position" contesting their assent to the Terms, which was ultimately found incorrect but was nevertheless a legitimate argument. (*Id.* at 13.) Third, Plaintiffs contend that "no court ever found its arguments to be without any reasonable basis" because they stipulated to arbitration, and "[w]ithout such a finding, an inherent authority fee award would be inappropriate and would chill legitimate challenges to arbitration clauses." (*Id.*) Fourth, Plaintiffs argue that even if a court finds a party's legal position unmeritorious, "the court must find that the conduct was driven by an improper motive" in order to award attorneys' fees under the court's inherent powers. (*Id.* at 14 (citing *Crystal Pool AS v. Trefin Tankers Ltd.*, No. 12-CV-9417, 2014 WL 1883506, at *1 (S.D.N.Y. May 9, 2014)).) Fifth, Plaintiffs cite to

*MDG Real Estate Global Limited v. Berkshire Place Associates, LP.*, 513 F. Supp.3d 301 (E.D.N.Y. 2021), to support that filing in California state court, while the incorrect contractual forum, was not bad faith because the holding in *MDG Real Estate Global* shows that "an attorney's decision to seek relief in a forum that proved to be procedurally unorthodox did not constitute bad faith." (*Id.*)

The Court declines to find bad faith in the Actions and does not award attorneys' fees based on its "inherent equitable powers." *First Nat. Supermarkets, Inc*, 118 F.3d at 898. The Second Circuit has found that a court may award attorneys' fees and costs as sanctions pursuant to its inherent authority when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)); *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 819 (2d Cir. 2022) ("[A] court retains 'inherent equitable powers' to 'award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985))); *see Nippon Yusen Kabushiki Kaisha v. XCoal Energy & Res.*, No. 25-CV-9310, 2026 WL 1361681, at *3 (S.D.N.Y. May 15, 2026) ("On motions to compel arbitration, courts award fees under their inherent equitable powers 'where the party refusing arbitration acted without justification or did not have a reasonable chance to prevail.'" (quoting *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-CV-1853, 2011 WL 1002439, at *3 (S.D.N.Y. Jan. 5, 2004), *aff'd*, 483 F. App'x 634 (2d Cir. 2012))).

The record does not demonstrate bad faith. Once Judge Almadani found Plaintiffs were bound by the Terms and granted Temu's motion to transfer, Plaintiffs articulated a colorable argument as to why they believed their claims were not subject to arbitration, and in the alternative, asked to proceed with a batch of one hundred cases in Informal Dispute Resolution

("IDR")[9] before arbitration. (*See* Pls.' Opp'n Ltr. to Def.'s Pre-Mot. Ltr. dated Nov. 4, 2025.) Although Plaintiffs' arguments concerning consent to the Terms and arbitrability failed, they do not demonstrate that Plaintiffs acted in bad faith. *See Commodities & Mins. Enter. Ltd.*, 49 F.4th at 820 (declining to find bad faith and award attorneys' fees because although the Second Circuit "ultimately disagree[d] with [the defendant's] arguments," they "were not without justification" (internal quotation marks and citation omitted)); *TIG Ins. Co. v. Am. Home Assurance Co.*, No. 18-CV-10183, 2020 WL 605974, at *4–5 (S.D.N.Y. Feb. 7, 2020) (granting the motion to compel arbitration but denying the motion for attorneys' fees because while the plaintiff did not prevail, the suit was brought in good faith and was not brought for the purposes of harassment or delay); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 340 (S.D.N.Y. 2014) (granting the motion to compel arbitration but denying the motion for attorneys' fees pursuant to the court's inherent equitable powers because the plaintiff's refusal to arbitrate was not "irrational [or] inexplicable" (citation and alterations omitted)); *See Josie-Delerme v. Am. Gen. Fin. Corp.,* No. 08-CV-3166, 2009 WL 2366591, at *5 (E.D.N.Y. July 31, 2009) (granting motion to compel arbitration but denying motion for attorneys' fees even while agreeing that the plaintiff's "claims regarding the validity and applicability of the [arbitration agreement were] without merit" and that "her response to [the] defendants' motion was cursory"); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) ("[W]e have declined to uphold [fee] awards under the bad-faith

[9] Section 19.2 of the Terms requires an IDR condition precedent to commencing arbitration that requires before "either party commences arbitration against the other," the parties "will personally meet and confer telephonically or via videoconference, in a good faith effort to resolve informally any [d]ispute covered by this [a]rbitration [a]greement" (the "IDR Conference"). (Terms § 19.2.) "[C]ounsel may participate in the [IDR C]onference, but [the complainant] also agree[s] to participate in the conference." (*Id.*) "The party initiating a [d]ispute must give notice to the other party in writing of its intent to initiate an [IDR] Conference" which must include "a description of [the dispute]" along with account identification information (the "IDR Notice"). (*Id.*) "Engaging in the [IDR] Conference is a condition precedent and requirement that must be fulfilled before commencing arbitration," and any "statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the [IDR] Conference process required by this section." (*Id.*)

exception absent both 'clear evidence' that the challenged actions are 'entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' and a 'high degree of specificity in the factual findings of [the] lower courts.'" (third and fourth alterations in original) (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986))).

**c. Attorneys' fees**

Temu requests the Court award $597,553 total in attorneys' fees representing 733 hours of work. (Def.'s Mem. 15.) In support, Temu submits a twenty-six-page spreadsheet of billing entries reflecting the time Latham & Watkins attorneys and other professionals incurred in the Actions.[10] In addition, Temu submits six exhibits of rates requested by other large litigation firms in Chapter 11 bankruptcy proceedings in bankruptcy courts.[11]

Plaintiffs label Temu's request as an "extraordinary fee award" with excessive fees related to tasks that fall outside of the scope of the motion to compel arbitration and with

---

[10] (Attorneys' Fees Chart; an itemized chart of costs ("Costs Chart"), (Costs Chart, annexed to Turner Decl. as Ex. C2, Docket Entry No. 50-6); a chart of hourly rates for the attorneys and staff who worked on the Actions ("Schedule of Effective Hourly Rates"), (Schedule of Effective Hourly Rates, annexed to Turner Decl. as Ex. D, Docket Entry No. 50-7); and biography pages of those attorneys, (Biographies, annexed to Turner Decl. as Ex. E, Docket Entry No. 50-8).)

[11] (Suppl. Decl. of partner at Davis Polk & Wardwell LLP from *In re Azul S.A.*, No. 25-BR-11176 (Bankr. S.D.N.Y. filed Dec. 31, 2025) ("Davis Polk Fees"), annexed to Turner Decl. as Ex. F, Docket Entry No. 50-9; Summary Sheet for fees by Weil, Gotshal & Manges LLP from *In re Broadway Realty I Co.*, No. 25-BR-11050 (Bankr. S.D.N.Y. filed Oct. 31, 2025) ("Weil Fees"), annexed to Turner Decl. as Ex. G, Docket Entry No. 50-10; Suppl. Decl. of partner at Milbank LLP from *In re United Site Servs., Inc.*, No. 25-BR-23630 (Bankr. D.N.J. filed Jan. 23, 2026) ("Milbank Fees"), annexed to Turner Decl. as Ex. H, Docket Entry No. 50-11; Not. of Interim Fee Application Req. filed by Paul, Weiss, Rifkind, Wharton & Garrison LLP from *In re Ligado Networks LLC*, No. 25-BR-10006 (Bankr. D. Del. filed Jan. 5, 2025) ("Paul Weiss Fees"), annexed to Turner Decl. as Ex. I, Docket Entry No. 50-12; Not. of Rate Increase filed by Simpson Thacher & Bartlett LLP from *In re Ambipar Emergency Response*, No. 25-BR-90524 (Bankr. S.D. Tex. filed Dec. 19, 2025) ("Simpson Fees"), annexed to Turner Decl. as Ex. J, Docket Entry No. 50-13; Final Fee Application filed by Sullivan & Cromwell LLP from *In re FTX Trading Ltd.*, No. 22-BR-11068 (Bankr. D. Del. filed Jan. 10, 2025) ("Sullivan & Cromwell Fees"), annexed to Turner Decl. as Ex. K, Docket Entry No. 50-14.)

excessive hours for a "motion to compel [that] was not a fresh undertaking" but one that "recycled arguments." (Pls.' Opp'n 1–2.) Plaintiffs ask the Court to "reject Temu's attempt to recover removal, transfer, administrative, and recycled-work fees, deny costs unrelated to the arbitration order, apply Eastern District rates rather than bankruptcy-market mega-case rates, and substantially reduce any award to reflect the narrow work actually necessary to secure the stipulated order." (*Id.* at 2.) Plaintiffs also list a series of billing entries that they ask the Court to exclude including, "[1] all fees and costs incurred before Temu's October 27, 2025 [Eastern District of New York] pre-motion letter; [2] all removal, transfer, forum, and venue work; [3] all consolidation, related-case, stay, scheduling, and case-management work; [4] all clerical, docketing, plaintiff-name entry, ECF, filing, and calendar work; [5] all pro hac vice costs and unrelated court-research charges; [6] all duplicated work traceable to *Hu* and *Ziboukh* prior briefing; and [7] all fees sought against Potter Handy under the contract, because Section 19.8 runs between Temu and users, not between Temu and counsel." (*Id.* at 16.) After those fees and costs are excluded, Plaintiffs estimate a total of "approximately 59.18 hours and $73,151.76 before any reductions." (*Id.*)

Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case . . . ." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105–06 (2d Cir. 2022) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp*., 537 F.3d 132, 151 (2d Cir. 2008)); *see Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) (summary order) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 358 (2d Cir. 2021) (quoting same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable

discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))). In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see Ortiz*, 843 F. App'x at 359 (quoting *Lilly*, 934 F.3d at 230). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606–07 (2d Cir. 2020) ("'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" (quoting same)). "Courts look to '[b]oth "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint.'" *Holick*, 48 F.4th at 109 (quoting *Barfield*, 537 F.3d at 152). Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *id.* at 190 (clarifying that district courts should consider, among others, the factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *see Lilly*, 934 F.3d at 229–30 (explaining the *Arbor Hill* factors).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first quoting *Arbor Hill*, 522 F.3d at 183; and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–53 (2010)); *see SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*, Nos. 23-7313, 23-7321, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (summary order) (quoting *Millea*, 658 F. 3d at 166); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d at 183–84)); *Grant v. Lockett*, Nos. 19-469, 19-738, 19-1558, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021) (summary order) ("Courts calculate a presumptively reasonable fee under § 1988 by 'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)). The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." (alteration in original)); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation." (alteration in original))); *see also Godinger Silver Art Ltd. v. Amazon Storefront HODSOF US*, No. 23-CV-7087, 2024 WL 4145724, at *6 (E.D.N.Y. Sep. 11, 2024) (holding that a prevailing plaintiff must provide detailed billing records specifying hours worked, rates charged, and related costs before the court can assess reasonableness of requested fees, and directing submission of supplemental documentation).

**i. Reasonable hourly rate**

Temu requests the following effective hourly rates for Latham & Watkins staff: Serrin Turner, partner, $1,683 per hour; Alexander C.K. Wyman, partner, $1,683 per hour; Matthew Valenti, associate, $1,441 per hour; Kathryn Running, associate, $1,441 per hour; Panya Gupta, associate, $1,122 per hour; Alexandra van Doren, associate, $1,122 per hour; Saisha Mediratta, associate, $973 per hour; Christina Williams, associate, $829 per hour; Hannah Kim, paralegal, $383 per hour; "Litigation Support Staff,"[12] between $446–$680 per hour.[13] (Schedule of Effective Hourly Rates.)

Temu argues these fees are reasonable given the attorneys' experience, reputation and ability because Latham & Watkins is "consistently ranked as a top law firm, in particular for its complex litigation practice." (Def.'s Mem. 16.) Partner Serrin Turner "was a former Assistant United States Attorney for the Southern District of New York with over 25 years of experience, including in complex commercial litigation, cybersecurity, and privacy matters." (*Id.* (citing Biographies).) In addition, Turner has received awards and recognition for his work as a lead cybercrime prosecutor. (*Id.*) Partner Alex Wyman has thirteen years of litigation experience, including five years as an Assistant United States Attorney for the Central District of California, and has substantial experience in complex commercial litigation. (*Id.* at 16–17.) Senior associate Matthew Valenti has been practicing since 2017 and has experience in complex

[12] Latham & Watkins does not define Litigation Support Staff, but the Court assumes the following staff listed in the Attorneys' Fees Chart are Litigation Support Staff based on the hourly rate charged: Liana Bickford, Lindsay Taylor Cinotto, Hannah Grace Cox, Gavin Coyle, Catherine DeSilvester, Tracey Dewitt, Lara Juliette Drinan Yeganeh, Marisol Garcia Valdez, Rachel L Kohn, Cheryl L Leith, Katherine B Magaziner, Angela Baila Merring, Hector R Munoz, Jonathan O'Conner, Mynor Kevin Peralta, Megan Rose Roth, Natalie Sagara, Danielle Elizabeth Sekerak, Nancy Stranger, and King Ha Wong. (*See* Attorneys' Fees Chart.)

[13] In addition, as indicated by fees charged in the Attorneys' Fees Chart, there are two attorneys whose rates are not included in the Schedule of Effective Hourly Rates: Maeve Millen and Varun Vijay. (*See* Attorneys' Fees Chart.) Millen billed $176.38 for 0.25 hours, and Vijay billed $1,799.04 for 2.55 hours. (*See id.*) The Court does not reduce these rates.

commercial litigation including securities, data breach, and data privacy litigation. (Schedule of Effective Hourly Rates; Biographies 6–7.) Associate Kathryn Running is a member of the Litigation & Trial Department, working on complex commercial litigation, consumer class actions, and copyright infringement, and has been practicing since 2018. (Biographies 8.) Dr. Alexandra van Doren, an associate, has been practicing since 2022 and works in the Litigation & Trial Department, with experience in complex commercial litigation and white collar investigations. (*Id.* at 9.) Associate Saisha Mediratta began practicing in 2023 and works on a variety of litigation matters. (*Id.* at 10.) Associate Christina Williams began practicing in 2025 and works in the Litigation & Trial Department. (*Id.* at 11.) Temu did not provide any biographical information for paralegal Hannah Kim or for any of Litigation Support Staff.

First, Temu argues that these rates are "commensurate with market rates for litigation partners of similar reputation and ability in New York City, and align with contemporaneous rate disclosures filed by peer firms handling similarly complex matters." (Def.'s Mem. 17 (listing fee applications of Chapter 11 proceedings in bankruptcy courts).) Temu also contends that the fees in the cited bankruptcy filings by peer firms are "not bankruptcy-specific and represent[] the firms' standard rates." (Def.'s Reply 7.) Temu argues that Plaintiffs misplace the relevant inquiry when arguing that Latham & Watkins rates are unreasonable because the bankruptcy cases are not comparable, and the appropriate consideration is whether Temu's rates are "consistent with those of 'lawyers of reasonably comparable skill, experience, and reputation.'" (*Id.* at 6 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).) Second, Temu contends that their agreement to pay Latham & Watkins rates "reflects a market-tested determination that the rates are reasonable for the services provided." (Def.'s Mem. 18; Def.'s Reply 6–7.) Third, Temu argues that Plaintiffs do not "dispute Temu's sophistication nor argue that a client in Temu's position was required to retain counsel at lower rates." (Def.'s Reply 7.)

Plaintiffs argue, first, that Temu's requested rates "far exceed ordinary Eastern District rates and are unsupported by the work actually performed." (Pls.' Opp'n 10.) Second, Plaintiffs contend that the large bankruptcy cases cited by Temu as offering peer rates "are not comparable" because "[t]his is not a massive Chapter 11 restructuring, debtor-in-possession representation, or multidistrict bankruptcy fee application" but "an arbitration motion that Plaintiffs did not oppose" based on arguments "already litigated in *Hu* and *Ziboukh*." (*Id.*) Third, Plaintiffs argue that recent Eastern District of New York rates are far below Temu's requested rates and cite to a recent case that "criticized outdated [Eastern District of New York] rates and increased them in a complex [Fair Credit Reporting Act] case, approv[ing] rates of $650, $620, and $600 for highly qualified partners, $350 for a senior associate, $275 for a junior associate, and $125 for a paralegal." (*Id.* (citing *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 237 (E.D.N.Y. 2025)).)

"[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly*, 934 F.3d at 231 (second and third alterations in original) (quoting *Arbor Hill*, 522 F.3d at 190); *see Agudath*, 2023 WL 2637344, at *2 (quoting same). Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum*, 465 U.S. at 895 n.11); *see Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) (summary order) ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))). Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing

in the district.'" *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (discussing forum rule (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172, 175–76 (2d Cir. 2009))); *Chaparro*, 2021 WL 5121140, at *1–2 (affirming district court decision on reasonableness of hourly rate in accordance with forum rule).

"[T]he fee applicant [has the burden] to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 61 (E.D.N.Y. 2024) (second alteration in original) (quoting *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014)); *see also Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209–211 (2d Cir. 2005) (explaining that district courts must ground their rate determinations in the evidentiary record rather than relying on assumptions based on the proof submitted). When the evidentiary submission does not substantiate the level of experience necessary to support the proposed rates, courts reduce the requested compensation. *See Howarth v. FORM BIB LLC*, No. 18-CV-7047, 2020 WL 3441030, at *5 (S.D.N.Y. May 11, 2020) ("Where a moving party 'fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.'" (quoting *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 362 (S.D.N.Y. 2010))), *report and recommendation adopted*, 2020 WL 3436685 (S.D.N.Y. June 22, 2020);

*Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at *19 (E.D.N.Y. Oct. 1, 2019) ("[W]hen a party fails to provide information to support the hourly rate of an associate, courts may reduce the hourly rate to the lowest associate rate in the range."), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300–02 (E.D.N.Y. 2012) (finding the attorney's submitted declaration, which only "provide[d] some background on his experience in civil rights litigation," stated he had worked "on unspecified matters," and detailed experience at two firms which did not "have a practice in civil rights or housing discrimination litigation," did not demonstrate relevant litigation experience or a background consistent with the senior-level rate sought but that "much closer to a junior associate than the senior partner whose hourly rate he hope[d] to claim," and thus reduced the requested rate to that of a junior associate). Courts have also determined that information such as an attorney's admission date or title does not alone establish entitlement to the higher end of senior-level market rates. *See UFCW Loc. One Health Care Fund v. Greene Great Am., Inc.*, No. 23-CV-1441, 2025 WL 1506163, at *6 n.5 (N.D.N.Y. May 27, 2025) ("Given [the attorney's] 28 years as an attorney, she may be entitled to a greater rate of compensation, but as the record contains no information regarding fields of expertise, reputation, or professional experience, the [c]ourt awards the high end of the associate rate."); *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sep. 15, 2022) ("[I]n the context of attorney's fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate." (quoting *Lopez v. Ki Moon Rest. Corp.*, No. 17-CV-6078, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021))), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sep. 30, 2022); *Tjartjalis v. Pro. Claims Bureau, Inc.*, No. 14-CV-1412, 2016 WL 4223493, at *2 (E.D.N.Y. Aug. 9, 2016) ("Although [the attorney was] presumably [ ] a partner at the new

firm, that title does not, in and of itself, confer him with a higher level of experience warranting a higher hourly rate."). "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Melo*, 750 F. Supp. 3d at 61 (quoting *Brown*, 2014 WL 1237448, at *5); *id.* at 61–62 (concluding that although counsel had "been admitted to practice since 1992 and is counsel at the firm," "no other information [was] provided about him," and "[t]he affidavit [did] not provide information as to [the attorney's] experience," the court found "the requested rate excessive" and instead awarded $325 per hour as "appropriate" and "at the high end for senior associates").

The Court finds that Temu has established the reasonableness of Latham & Watkins hourly rates for attorneys based on the information submitted by Latham & Watkins, the complexity of this case, and the willingness of Temu to pay those rates, but the Court finds the requested rates for paralegal Hannah Kim and the Litigation Support Staff are unsupported and excessive.

To support its hourly rates, Latham & Watkins submitted the billing rates of six "peer firms handling similarly complex matters," all for Chapter 11 bankruptcy proceedings. (*See* Def.'s Mem. 17.) The Court appreciates that the rates provided in the Chapter 11 bankruptcy cases may not be "bankruptcy-specific and represent[] the firms' standard rates," as Temu claims (Def.'s Reply 7), but Temu does not explain how the Chapter 11 bankruptcy proceedings are just as "similarly complex," (Def.'s Mem. 17) — one of the relevant considerations in determining a reasonable hourly fee. *See Lilly*, 934 F.3d at 231–32 (providing that the complexity of a matter is one of the relevant case-specific variables in awarding attorneys' fees). However, Latham & Watkins requested rates lower than the amounts requested in the Chapter 11 bankruptcy cases. (*See, e.g.*, Davis Polk Fees 2 (2026 hourly rates charged $2,345 to $2,935 for partners and $775 to $1,885 for associates); Weil Fees 4–5 (2025 hourly rates charged $1,995 to $2,075 for

litigation partners and $890 to $1,560 for litigation associates); Paul Weiss Fees (2025 hourly rates of up to $2,765 for partners and up to $1,895 for associates).)

Nevertheless, the Court independently finds that the issues in the Actions are complex, involving novel interpretation of the Terms, significant risks from litigation, and complicated civil procedure involving removal, consolidation, and transfer. *See Arbor Hill*, 522 F.3d at 184; (listing the complexity and difficulty of the case as a relevant factor in fee determinations); *Goldberger v. Integrated Res.*, Inc., 209 F.3d 43, 50 (2d Cir. 2000) (noting the magnitude and complexities of the litigation and the risk of the litigation in determining the reasonableness of fees (citation omitted)).

Cases in the Southern District of New York offer reasonable hourly rates for peer firms engaging in complex litigation. *See, e.g.*, *Zama Cap. Advisors LP & Zama Cap. Strategy Advisors LP v. Universal Ent. Corp.*, No. 24-CV-1577, 2025 WL 3525044, at *7 (S.D.N.Y. Dec. 9, 2025) (approving hourly rates for Milbank partners ranging between $1,712 to $1,980 and associates from $716 to $1,168); *Oakley v. MSG Networks, Inc.*, No. 17-CV-6903, 2025 WL 3041936, at *7 (S.D.N.Y. Oct. 31, 2025) (awarding rates for King & Spalding LLP attorneys ranging from $1,250 to $1,709 for partners and counsel and $374 to $1,135 for associates); *Adstra, LLC v. Kinesso, LLC*, No. 24-CV-2639, 2025 WL 1070034, at *7 (S.D.N.Y. Apr. 9, 2025) (approving hourly rates for Greenberg Traurig, LLP of $1,421 for a partner and between $554 to $883 for associates given the factual and legal complexity of the matter), *appeal filed*, No. 25-1226 (2d Cir. May 13, 2025).

The Court also acknowledges the reasonable rates in the Eastern District of New York cases range between approximately $100 to $450, depending on experience level and complexity of the issues, *see, e.g.*, *Konits v. Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011) (noting rates for attorneys in E.D.N.Y. cases ranged from $300–$400 (citing *Konits v. Valley Stream Cent. High Sch. Dist.*, No. 01-CV-6763, 2010 WL 2076949, at *2 (E.D.N.Y. May 19, 2010)));

*Vazquez Romero v. La Morenita Fruit Mkt. Corp.*, No. 23-CV-6300, 2026 WL 687228, at *15 (E.D.N.Y. Mar. 11, 2026) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." (quoting *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 299 (E.D.N.Y. 2024)); *Shuford v. Cardoza*, No. 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("Courts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates." (citing *Crews v. Cnty. of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))), and at least one court has awarded above that range to account for inflation, *see Rubin*, 763 F. Supp. 3d at 243–44 (finding inflation-adjusted rates as $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals). *See also Yannes v. El Patron Minimarket Corp.*, No. 24-CV-8253, 2026 WL 2332152, at *15–16 (E.D.N.Y. Aug. 10, 2026) (summary order) (noting the attorneys' fees range within the Easter District of New York and the discretion of district courts to determine fees). In fact, Plaintiff cites *Rubin*, 763 F. Supp. 3d at 241, to support the outer limit of rates within the Eastern District of New York. (*See* Pls.' Opp'n 10.) However, the market rate in the Eastern District of New York does not reflect the rates of elite New York law firms with comparable experience to the attorneys at Latham & Watkins.

First, the Court finds Temu's willingness to pay Latham & Watkins at the requested rates indicative of rate reasonableness. *See Simmons*, 575 F.3d at 174 (holding that an hourly rate is considered reasonable if that rate is charged to a paying client); *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, No. 20-CV-7472, 2026 WL 1622771, at *6 (S.D.N.Y. June 4, 2026) ("That a reasonable, paying client paid the requested rates confirms that the rate is reasonable, because the rate paid by a reasonable client 'best approximates the workings of today's market

for legal services.'" (quoting *Arbor Hill*, 522 F.3d at 192)); *Kimba Indus. Inc. v. Fortegra Specialty Ins. Co.*, No. 24-CV-1334, 2026 WL 618037, at *5 (E.D.N.Y. Mar. 5, 2026) ("It is a firmly rooted principle that 'the reasonableness of an hourly rate may be determined exclusively by the rate a paying client would be willing to pay,' and here, because [the client] 'has in fact paid these rates,' the rates are presumptively reasonable." (quoting *Diplomatic Man, Inc. v. Nike*, No. 08-CV-139, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009))). Temu is a sophisticated client who paid Latham & Watkins' requested fees, demonstrating reasonableness. *See Zama Cap. Advisors LP*, 2025 WL 3525044, at *7 (finding the fact that the fees requested were paid by a sophisticated client supports reasonableness). Second, Temu has obtained significant success in the Actions, and in the *Hu* and *Ziboukh* litigation, in affirming and enforcing the Terms and proceeding to arbitration pursuant to the Terms. *See Barfield*, 537 F.3d at 152 ("'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." (quoting *Farrar*, 506 U.S. at 114)); *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005) ("The Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." (citing *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))). Accordingly, the Court finds the requested rates for Latham & Watkins' attorneys are reasonable.

In contrast, the requested rates for paralegal Kim and the Litigation Support Staff are unreasonable and unsupported. Latham & Watkins has not provided any information describing the credentials of Kim or the Litigation Support Staff. The market rate in the Eastern District of New York for paralegals is between $70 and $150. *See Restrepo v. Dynamic Fire, Inc.*, 819 F. Supp. 3d 158, 180 (E.D.N.Y. 2026) ("Courts in the [Eastern District of New York] and [Southern District of New York] generally consider hourly rates ranging from $70 to $150 to be reasonable for paralegals."); *Rubin*, 763 F. Supp. 3d at 244 (awarding rates between $100 and

$150 for paralegals); *US Foods, Inc. v. Kokoro Partners, LLC*, No. 17-CV-7403, 2023 WL 3007171, at *2 (E.D.N.Y. Apr. 19, 2023) (reducing the paralegals' hourly rate from $220 and $310 per hour for each paralegal and instead awarding $100 to each). Even the Southern District of New York district courts that awarded high attorneys' fees for similar elite New York law firms reduced the requested paralegal rates. *Oakley*, 2025 WL 3041936, at *7 (awarding an hourly rate of $200 for paralegals and other professionals and noting other courts in the Southern District of New York reduced paralegal hourly rates to $125 or $150 per hour where there was no particular skill, training or experience to justify those rates (citing *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, No. 23-CV-5262, 2024 WL 3409278, at *8 (S.D.N.Y. July 15, 2024))). The Court therefore reduces the hourly rate for paralegal Kim and the Litigation Support Team to $150 per hour.

**ii. Hours reasonably expended**

Temu submits hours reflecting approximately 733 total hours of attorney and paralegal time in connection with removal from California state court to California federal court, transfer to the Eastern District of New York, and preparing and filing the motion to compel arbitration in the Actions. (Def.'s Mem. 18–20.) First, Temu contends that Plaintiffs' overall litigation strategy resulted in a significant number of hours from Temu conducting duplicative work. (*Id.* at 19; Def.'s Reply 4–5.) For example, Plaintiffs filed nineteen separate complaints so Temu had to file nineteen removal notices, and a "significant number of these hours were spent by the litigation services team having to manually enter thousands of plaintiff names into [the electronic case filing system] in order to file the removed cases" because Plaintiffs named 900 individual Plaintiffs in each complaint. (Def.'s Mem. 18 n.10, 19; Def.'s Reply 4.) Second, Temu argues the hours reflect Potter Handy's improper forum selection. (Def.'s Mem. 19.) Third, Temu contends that courts have approved similar hours for similar work. (*Id.* at 20 (citing *Amaprop Ltd.*, 2011 WL 1002439, at *7 (finding 353.7 hours spent on a motion to compel arbitration over

a twelve-day period reasonable)).) Fourth, Temu argues that the total hours should especially be awarded in this case because Temu "was completely vindicated in its position," and Latham & Watkins' work "compelled [Plaintiffs] to concede arbitrability before even filing an opposition." (*Id.*)

Fifth, Temu rejects Plaintiffs' premise that recycling the same arguments from *Hu* and *Ziboukh* means Temu's work is not compensable because *Hu* and *Ziboukh* are "on-point authority from this very Court," and the fact that Temu did not have to start from scratch resulted in fewer hours than what would have been required to obtain an order to compel arbitration. (Def.'s Reply 2.) Temu contends that if Temu had started from scratch, then the hours billed for drafting a motion to compel would "be at least be several times that amount." (*Id.* at 3.) Sixth, Temu argues that Plaintiffs incorrectly contend that layered staffing implies duplicative work, but in reality, Temu's staffing indicates delegation to associates and support staff charging lower rates and performing tasks under the supervision of senior attorneys. (*Id.* at 4–5.) Seventh, with respect to hours billed for internal conferencing, Temu contends that Plaintiffs' estimated hours billed for internal meetings "is grossly inflated" and overlooks that those conferences served a legitimate purpose, were typically under thirty minutes each, and were necessary for coordinating a litigation team. (*Id.* at 6.)

Plaintiffs argue, first, that the amount of fees requested is "patently unreasonable" because "billing records show that . . . [t]he motion to compel substantially duplicated arguments, structure, authorities, and language from Temu's earlier arbitration briefs in *Hu* and *Ziboukh*." (Pls.' Opp'n 2–3.) Potter Handy states that it "used some AI tools" to compare Temu's motion to compel in the Actions to those in *Hu* and *Ziboukh* and found that "[s]ignificant portions are copied nearly verbatim from *Hu*," "[e]ntire paragraphs appear only lightly edited," the contract formation section was likely 70–90% substantively identical to *Hu*, and the legal standard section was "likely 80%+ duplicated." (*Id.* at 4.) In total, Plaintiffs contend that Temu

was in an "enviable position of having a canned motion, twice-successful in front of the same [Court]," and Temu only had to make "modest changes to reflect the procedural history and facts in the current case." (*Id.* at 5.) Plaintiffs state it is "unconscionable" that Temu can request $650,000 as result of duplicated material and "a capitulation from [Plaintiffs]." (*Id.*)

Second, Plaintiffs argue that "[d]espite that duplication, Temu staffed the matter as though it were complex, novel litigation" with excessive hours, "overstaffed internal coordination" such as extensive strategy calls and layered review. (*Id.* at 3.) Plaintiffs contend the Attorneys' Fees Chart shows "a heavily layered staffing model with more than thirty timekeepers, including partners, associates, litigation support, and other personnel all billing into the same workstreams." (*Id.* at 7.) In support, Plaintiffs point to entries dated August 5 and 6, 2025 and December of 2025 showing "multiple lawyers billed for strategy conferences and layered drafting on the same forum reply brief" and "a top-heavy, iterative review process in which senior lawyers, junior lawyers, and support staff [ ] all layered onto the same briefs and filings." (*Id.* at 7–8.) Plaintiffs also provide an analysis of Temu's Attorneys' Fees Chart ("Intra-Firm Meeting Report") and allege that Temu billed "62.90 hours for just intra-firm meetings by Temu's attorneys[] and more than 15 hours for intra-firm meetings just related to the motion to compel arbitration." (*Id.* at 8 (citing Intra-Firm Meeting Report, annexed to Hemming Decl. as Ex. I, Docket Entry No. 51-10).) Plaintiffs contend that Temu "cannot convert that staffing choice into a contractual obligation of Plaintiffs." (*Id.* (first citing *Hensley*, 461 U.S. at 434; and then citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).)

Third, Plaintiffs argue that Temu billed numerous "[p]urely clerical or secretarial tasks [that] are not compensable fee-shifting work." (*Id.* at 9 (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)).) In support, Plaintiffs identify entries for hours spent by the Litigation Support Staff "manually entering plaintiff names into [the Electronic Court Filing System] . . . update[ing] case trackers and calendars, maintain[ing] share folders, coordinat[ing] courtesy

copies, review[ing] local rules for filing logistics, and otherwise managing administrative filing tasks." (*Id.*) In response to Temu's argument that much of the volume of some of the administrative tasks was the result of Plaintiffs' litigation strategy, Plaintiffs argue "that does not make the tasks legal work, and it does not transform docket-entry labor, calendaring, filing logistics, and courtesy-copy coordination into recoverable attorney's fees under Section 19.8." (*Id.*)

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sep. 9, 2024) ("In determining whether the number of hours worked is reasonable, a district court should examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." (alteration in original) (internal quotation marks omitted) (quoting *Chaparro*, 2021 WL 5121140, at *2)); *see Talmaci v. VEP Assocs. LLC*, No. 22-CV-5309, 2025 WL 2622122, at *14 (E.D.N.Y. Sep. 11, 2025) ("In reviewing reasonableness of hours billed, 'a district court should examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case, and if it concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.'" (quoting *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010))), *report and recommendation adopted*, 2025 WL 2772883 (E.D.N.Y. Sep. 26, 2025)). To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done. *See Raja v. Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022) (explaining that the party seeking attorneys' fees "must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (citation and internal quotation marks omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011)

("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records."); *Morales v. Fine Design Masonry, Inc.*, No. 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024) (noting that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done" (first quoting *Maldonado v. Srour*, No. 13-CV-5856, 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016); and then quoting *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 250–51 (E.D.N.Y. 2020))), *report and recommendation adopted*, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024). Block billing, "the practice of lumping multiple distinct tasks into a single billing entry — is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja*, 43 F.4th at 87 (citing *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)); *see Gym Door Repairs, Inc. v. Guardian Gym Equip.*, No. 23-7924, 2026 WL 891131, at *3–4 (2d Cir. Apr. 1, 2026) (summary order) (affirming the district court's reduction of the requested fee award by fifteen percent for block billing because counsel blended clerical and legal work in its submitted attorney records); *Abularach*, 2025 WL 405986, at *8–9 (recognizing that while block billing is permissible if the court can meaningfully review the hours, courts may reduce total time when billing includes excessive or administrative work). However, "the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours" and is "permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Raja*, 43 F.4th at 87 (quoting *Restivo*, 846 F.3d at 591). "In determining the first component of the lodestar — the number of hours reasonably expended — the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir.

2023) (quoting *Raja*, 43 F.4th at 87), *cert. denied*, 144 S. Ct. 490 (2023). "[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Raja*, 43 F.4th at 87); *see Gym Door Repairs, Inc.*, 2026 WL 891131, at *1 (quoting *Kirsch*, 148 F.3d at 173) (same).

**1. Recycled work product**

In calculating attorneys' fees, if an attorney recycles work product across similar matters, then that improved efficiency should be reflected in a reduced number of requested hours. *See Cawthon v. Cong Ty Co. Phan Tap Doan Apec Viet Nam*, No. 22-CV-7396, 2024 WL 5452618, at *9 (S.D.N.Y. Dec. 16, 2024) ("While there is no prohibition on recycling work product in similar matters in the name of efficiency, that efficiency should be reflected in counsel's billing records. It is not appropriate that counsel should bill — and expect the Court to award — large sums for repurposed court submissions."), *report and recommendation adopted*, 2025 WL 722711 (S.D.N.Y. Mar. 6, 2025). Courts have reduced the total hours billed when attorneys recycled boilerplate work product or filed work product replete with prejudicial errors. *See e.g.*, *Dunston v. Babushka LLC*, No. 24-CV-2969, 2025 WL 2980857, at *4–5 (E.D.N.Y. Oct. 22, 2025) (reducing the total number of hours by 20% because, *inter alia*, counsel "referred to [the p]laintiff by the incorrect pronouns, and even the incorrect name, suggesting that she uses a template for these matters, which would minimize the hours she expended"); *Hashimi v. Conandy Realty LLC*, No. 23-CV-2300, 2025 WL 914697, at *4 (E.D.N.Y. Mar. 26, 2025) (justifying reduction of fees "[i]n cases such as the instant matter where the pleading and motion for a default judgment are cookie-cutter and almost identical to other cases filed by plaintiff's counsel"); *S.C. v. N.Y.C. Dep't of Educ.*, 2024 WL 1447331, at *8 (S.D.N.Y. Apr. 2, 2024) ("The facts in this case warrant a 25% reduction [of the hours] billed for the federal case. [Counsel] has once again excessively billed for boilerplate and/or recycled pleadings.").

The records and work product in this case do not reflect boilerplate filings, prejudicial errors, or excessive hours warranting a reduction of fees premised on recycled work product from the *Hu* and *Ziboukh* litigation. While Temu reused many of the same arguments regarding the Terms, the work product in the Actions was original, specific, and free of copy and paste errors. Instead, the overlap of issues between *Hu* and *Ziboukh* is logical and inevitable considering they address the same Terms and similar concerns of conscionability and arbitration. *See Adusumelli v. Steiner*, Nos. 08-CV-6932, 09-CV-4902, 10-CV-4549, 2013 WL 1285260, at *3 (S.D.N.Y. Mar. 28, 2013) ("[S]imilarity between two briefs is not, in itself, a reason to reduce a fee award, as one would imagine that the use of prior work would be reflected in the fee request itself"). Rather, by Plaintiffs' own estimate, Latham & Watkins billed approximately 59.8 hours "related to the motion to compel and pre-motion process," (Pl.'s Opp'n 16), which is reasonable and reflects an efficient use of recycled work product. *See Amaprop Ltd.*, 2011 WL 1002439, at *7 (finding 353.7 hours billed over twelve days on a motion to compel arbitration reasonable); *ACE Ltd. v. CIGNA Corp.*, No. 00-CV-9423, 2001 WL 1286247, at *7 (S.D.N.Y. Oct. 22, 2001) (finding 534 hours billed for a motion to compel arbitration excessive and reducing attorneys' fees by 50%).

**2. Excessive, redundant, or otherwise unnecessary hours**

The Court has reviewed the hours billed in the Attorneys' Fees Chart and finds several tasks with hours that are either "excessive, redundant, or otherwise unnecessary." *Kirsch*, 148 F.3d at 173. For example, there are a multitude of entries for drafting and reviewing notices of removal totaling more than 33 hours for associate Saisha Mediratta, 5 hours for partner Alexander Wyman, and 30 hours for paralegal Hannah Kim for only the "first round" of notices of removal for *In re Whaleco/Potter Handy Data Privacy Mass Actions*, plus many additional hours for the "second round" of notices of removal for *In re Whaleco Privacy Litigation*. (*See* Attorneys' Fees Chart entries dated 5/5/2025 to 5/23/2025.) The Court recognizes that the

amount of time billed relates to the manner in which Plaintiffs litigated the Actions by filing multiple cases instead of a single class action, (Judge Almadani Order granting Motion to Transfer 7–8 ("[B]ecause this is a consolidated action comprised of thousands of nationwide individual plaintiffs (rather than a typical and much less burdensome Rule 23 class action), it will impose a significant burden on whatever court ultimately hears the dispute.")), but finds that a total of more than 68 hours for the "first round" of notices of removal nevertheless represents an excessive amount of time spent on notices of removal for nearly identical actions. *See Park Lane IBS, LLC v. Unbnd Grp. Pty Ltd.*, No. 23-CV-8620, 2025 WL 1576203, at *5–6 (S.D.N.Y. June 4, 2025) (finding more than 40 hours billed for researching and drafting a notice of removal excessive and reducing the amount of attorneys' fees by 40%); *S.J. v. N.Y.C. Dep't of Educ.*, No. 12-CV-1922, 2020 WL 6151112, at *6–7 (S.D.N.Y. Oct. 20, 2020) (concluding plaintiff's counsel billed an excessive amount of time devoted to a straightforward litigation task and reducing the hours billed by 50%), *report and recommendation adopted as modified*, 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021), *aff'd*, No. 21-240, 2022 WL 1409578 (2d Cir. May 4, 2022) (summary order).

The Court also finds that many entries of cite checking were performed by associate attorneys — work that could have been done by a paralegal. (*See* Attorneys' Fees Chart entries dated August 11, 2025, Panya Gupta (5.20 hours) "Proof and cite check reply brief to finalize for filing"; December 21, 2025, Christina Williams (3.20 hours) "Conduct cite check of motion to compel arbitration"; December 22, 2025, Christina Williams (0.70 hours) "Conduct cite check of motion to compel arbitration.") *See Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-CV-9612, 2024 WL 4288064, at *5 (S.D.N.Y. Sep. 25, 2024) (reducing fee award in part because proofing and cite checking work could have been done by a paralegal instead of an attorney); *see also Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655, 2020 WL 2771008, at *13 (E.D.N.Y. May 4, 2020) (finding the firm's "unreasonable allocation of the litigation tasks

involved" to partners instead of more junior attorneys resulted in excessive billing, "warranted a reduction in fees" (internal quotation marks omitted)), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).

In addition, the Court notes several instances of block billing. (*See, e.g.*, Attorneys' Fees Chart entries dated May 22, 2025, Hannah Kim (8.10 hours) "Assist with further preparation of notices of removal and supporting documents, finalize and coordinate filing; service of the same to counsel; update case pleadings; prepare initial draft of stipulation to extend time to respond to complaint"; June 25, 2025, Hannah Kim (1.10 hours) "Prepare and draft status update for Latham team; further preparation of draft motion to dismiss or transfer, including revising supporting documents; further preparation of second round of notice of removals, including revising proposed orders; attend to research and review of standing orders and motion filing requirements"; June 26, 2025, Saisha Mediratta (4.30 hours) "Meeting with A. Wyman to prepare for meet and confer; meet and confer with opposing counsel; prepare summary and discuss next steps with team; prepare joint statement for Wideman case and get on file; continue finalizing motions to dismiss."; November 10, 2025, Matthew Valenti, (3.90 hours) "Research for and drafting of response letter regarding proposed stay; strategize on revisions to Potter Handy response letter; review and revise letter to California state court on status of removed cases; revise response letter.")

The Court disagrees with Plaintiffs' characterization of Latham & Watkins' internal meetings as excessive based on Plaintiffs' Intra-Firm Meeting Report. The Intra-Firm Meeting Report is not an accurate portrayal of all meetings because Potter Handy included several legal research and drafting entries under the category of "intra-firm communications" and only "[p]ure drafting/research without an explicit intra-firm communication reference" were excluded. (Intra-Firm Meeting Report 1, 4, 10.) In other words, if a meeting was referenced in the same entry as drafting or researching an issue, then the Intra-Firm Meeting Report included the entry as an

intra-firm communication or meeting. (*Id.* at 4.) This is overinclusive and not representative of Latham & Watkins' actual internal meetings.

**3. Clerical tasks**

The Attorneys' Fees Chart includes a significant number of entries for clerical work including filing documents, entering Plaintiffs' names into the Electronic Filing System, updating PACER with information, calendaring deadlines, updating a litigation case tracker, and "attend[ing] to case management." (*See* Attorneys' Fees Chart.) Among others, there are 42 entries for "attend[ing] to case management" billed by paralegal Kim ranging from 0.2 hours to 3.60 hours per entry; and 25 entries billing hours for entering Plaintiffs' names ranging from 0.5 hours to 6.00 hours per entry. (*See id.*)

Courts have routinely held that tasks that are "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri*, 491 U.S. at 288 n.10; *see Barfield*, 537 F.3d at 139 (affirming district court's determination that time "spent on administrative tasks should not be compensated at all"); *L.R.C. v. Maldonado*, No. 25-CV-6825, 2026 WL 946787, at *4 (E.D.N.Y. Apr. 7, 2026) ("[I]t is well-settled that purely clerical tasks are not billable under a fee-shifting statute." (quoting *Blanding v. O'Malley*, No. 23-CV-881, 2024 WL 2293156, at *3 (D. Conn. May 21, 2024))); *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 368 (S.D.N.Y. 2018) ("[C]ase law holds that such secretarial tasks are considered part of a firm's overhead and are not to be included as part of an award for costs and fees."); *Struthers v. City of New York*, No. 12-CV-242, 2013 WL 5407221, at *9 (E.D.N.Y. Sep. 25, 2013) (declining to award fees for time spent on "communicating with the process server, filing documents with the court, scheduling depositions, and other related [administrative] tasks"); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) ("Even paralegal work . . . is not compensable if it is purely clerical."); *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 368 (S.D.N.Y. 2001) (collecting cases and noting that "[c]ourts of this Circuit have recognized

that clerical and secretarial services are part of overhead and are not generally charged to clients"); *see also Lilly*, 934 F.3d at 225 (affirming "the district court's decision to reduce the hours claimed through an across-the-board reduction to reflect the clerical work performed"); *Abularach*, 2025 WL 405986, at *9 (applying 10% across-the-board reduction in hours because of block-billing and non-compensable administrative tasks); *Torcivia*, 437 F. Supp. 3d at 253 (applying a 10% reduction of all hours billed to reflect time spent on clerical tasks). Accordingly, the Court will not compensate Temu for billing associated with these clerical or administrative tasks. *Barfield*, 537 F.3d at 139 (affirming district court's determination that time "spent on administrative tasks should not be compensated at all").

**4. Reduction**

In total, the billing practices of billing for excessive hours, billing at attorney rates for paralegal tasks, block billing, and billing for clerical tasks warrant a reduction of hours. In lieu of reviewing and deducting for each entry of non-compensable administrative work and excessive, redundant, or otherwise unnecessary hours, the Court reduces the total attorneys' fees across-the-board by 40%. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."); *H.C.*, 71 F.4th at 126 ("[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" (quoting *Raja*, 43 F.4th at 87)); *see also JC Hosp., LLC v. Hochberg*, No. 23-CV-2051, 2026 WL 1432827, at *5 (S.D.N.Y. May 21, 2026) (reducing requested attorneys' fees by 40% to account for excessive and duplicative billing, as well as billing for clerical tasks); *L.R.C.*, 2026 WL 946787, at *4 (reducing hours by 40% "in light of the relatively straightforward nature of the case, the excessive, redundant, or otherwise unnecessary time entries, and instances of block billing"); *Gym Door Repairs, Inc. v. Total Gym Repairs*, No. 15-CV-4244, 2023 WL 6519626, at *13 (S.D.N.Y. Mar. 31, 2023) (reducing hours billed by 35% for excessive, redundant, and

unnecessary billing, 15% for block billing, and 5% for clerical or administrative tasks); *see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (affirming a series of 50% deductions due to "voluminous" billings on quasi-administrative items and travel time).

**iii. Lodestar calculation**

The lodestar is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at 183–84). The Court calculates the lodestar for each timekeeper by multiplying the number of hours reasonably expended by the applicable reasonable hourly rate.

First, the Court reduces the hourly rate for paralegal Kim and the Litigation Support Team to $150 (the "Revised Paralegal Subtotal"). The Court added all of their hours, as indicated in the Attorneys' Fees Chart, and multiplied it by the reduced hourly rate of $150: (Kim's Hours (135.76) + Litigation Support Team Hours (186.65) = 322.41 hours total) x $150 = $48,361.50. The Revised Paralegal Subtotal is $48,361.50.

Second, the Court calculates the initial amount of fees requested by paralegal Kim and the Litigation Support Team (the "Initial Paralegal Subtotal"): Kim's Fees ($48,910.63) + Litigation Support Team Fees ($92,757.87) = $141,668.50. The Initial Paralegal Subtotal is $141,668.50.

Third, the Court calculates the difference between the Initial Paralegal Subtotal and the Revised Paralegal Subtotal to calculate the amount to subtract from Temu's total amount requested for attorneys' fees ("Difference between Paralegal Subtotals"). Initial Paralegal Subtotal ($141,668.50) – Revised Paralegal Subtotal ($48,361.50) = $93,307.00. The Difference between Paralegal Subtotals is $93,307.

Fourth, the Court subtracts the Difference between Paralegal Subtotals from Temu's requested attorneys' fees total to get the reduced total amount of attorneys' fees ("New

Attorneys' Fees Total"): Total amount of fees requested ($597,553) – Difference between Paralegal Subtotals ($93,307) = $504,246. The New Attorneys' Fees Total is $504,246.

Fifth, the Court applies a 40% reduction across-the-board to the New Attorneys' Fees Total: $504,246 x 40% = $201,698.40. The Court then subtracts the reduction of 40%, $201,698.40, from the New Attorneys' Fees Total to calculate the amount owed to Temu: $504,246 – $201,698.40 = $302,547.60.

Accordingly, consistent with the analysis above, the Court calculates the lodestar to be $302,547.60.

**d. Costs**

Temu represents that Latham & Watkins incurred $52,173 in costs, including legal research costs, court research costs, and filing fees. (*See* Costs Chart.)

Plaintiffs argue that the Court should "deny costs unrelated to the arbitration order," (Pls.' Opp'n 2), including costs from "before Temu's October 27, 2025 [ ] pre-motion letter" and "all pro hac vice costs and unrelated court-research charges," (*id.* at 16).

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (alteration in original) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). As with attorneys' fees, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs." *Id.* (citations omitted).

The Court has reviewed the Costs Chart and finds that all of the requested costs are compensable because they are adequately documented and reflect only court costs and research fees. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) ("[I]n the context of a fee-shifting provision, the charges for [ ] online research may properly be included in a fee award," and if the law firm "normally bills its paying clients for the cost of online research services, that expense should be included in the fee award.");

*Greenlight Cap. Inc. v. Fishback*, No. 24-CV-4832, 2026 WL 1801182, at *15 (S.D.N.Y. June 23, 2026) (awarding $120,052.01 in costs including the costs of online research since they were separate disbursements from the attorneys' hourly rates and fees and were well documented); *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab.-Mgmt. Cooperation Funds v. 34 Grp., Inc.*, No. 20-CV-2612, 2020 WL 5878256, at *3 (E.D.N.Y. Oct. 2, 2020) (awarding court costs for court filing fees and service fees because they are "routinely permitted"). Accordingly, the Court awards Temu $52,173 in costs.

## III. Conclusion

For the foregoing reasons, the Court (1) grants Temu $302,547.60 in attorneys' fees and (2) $52,173 in costs.

Dated: September 9, 2026
Brooklyn, New York

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge